UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT JAY MAZZA, JR., | CASE NO. 12-cv-5287-RBL-JRC |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | Noting Date: February 22, 2013 |
| Defendant. | |

        This matter has been referred to United States Magistrate Judge J. Richard

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261,

271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 11, 12, 13).

        Based on a review of the relevant record, the Court concludes that the ALJ erred

when he found that plaintiff's impairments, or combination of impairments, did not cause

more than a minimal effect on plaintiff's ability to function in a work environment. In

doing so, the ALJ failed to provide specific and legitimate reasons for his failure to credit fully opinions from plaintiff's examining doctor, who opined, among other things, that plaintiff "could not maintain regular attendance in the workplace or complete a normal workday/workweek without interruptions due to his psychiatric condition," and would "not be able to deal with the usual stress encountered in a competitive workplace" (Tr. 235).

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

<u>BACKGROUND</u>

Plaintiff, ROBERT JAY MAZZA, JR., was born in 1980 and was twenty seven years old on his alleged date of disability onset of October 1, 2008 (*see* Tr. 102). Plaintiff has a history of abuse as a child, including sexual abuse by an uncle from the age of three until the age of nine (*see* Tr. 200, 231). At the age of nine, plaintiff began using marijuana (*see* Tr. 233). Plaintiff testified that he uses "about an eighth a day," which he translated to "eight to ten cigarettes" (*see* Tr. 29).

Plaintiff left school in the ninth grade (*see* Tr. 31). When asked why he left school at such an early age, he replied: "Issues: I couldn't concentrate. I couldn't maintain social behavior; parents really didn't care for me so I felt I was having a lot of issues so I dropped. I didn't go back to school. From there I tried Job Corp" (Tr. 31). Regarding his work at Job Corp, plaintiff testified that he "made it approximately six months and I was medically terminated, discharged from Job Corp" (*see* Tr. 33). The medical issues he was

experiencing included "sleep deprivation and I want to say that it was more so behavioral outbreaks, outbursts" (*see id.*). He was sixteen at that time (*see* Tr. 34).

Plaintiff has an extensive work history, although it does not appear that he has maintained employment at any particular job for a long period of time (*see* Tr. 113-123). In fact, the record reflects that plaintiff worked for thirty-nine different employers in the ten years between 1999 and 2008 (*see id.*). When asked why he stopped working at his last job, plaintiff testified that he "couldn't see eye to eye with other workers. And, my employer felt like I was becoming a liability because I would have random outbursts and I wasn't able to control myself" (*see* Tr. 30). He testified that the longest job he had held was for about a year, or a year and a half (*id.*).

At his administrative hearing, the ALJ asked plaintiff what was going on with all of the jobs that he had over the years (*see* Tr. 35). Plaintiff responded as follows:

> Well some jobs were not even a 12 hour period I would be on the job and there would be a conflict. I would have an outburst or I couldn't handle what they were telling me to do, and, I would have an outburst and snap and it would cause my employment right then and there (sic). There have been physical altercations that I've had with employers where I have struck a few employers because they said the wrong thing or showed actions that would trigger and I couldn't control it and I felt bad afterwards but you know you hit a boss and there goes your paycheck [LAUGH].

(Tr. 35).

The ALJ also asked plaintiff if he ever had the opportunity to work independently, where he didn't have to interact with as many other employees or supervisors (*see* Tr. 35-36). Apparently, those situations likewise did not work out well for plaintiff, according to his testimony:

> I get to working and stuff and just thoughts would start running through my head, talking about well you know [SIGH] what if your wife is off doing something with somebody else, and I would start getting angry and raging inside and I would have to release and it would cause me to punch holes in walls or throw company equipment around. It would scare a lot of people on the job site because they're hearing this one guy just break and stuff and my supervisor would come over and sometimes it was bad enough that they would have to send me off the job site for the rest of the day and tell me come back tomorrow so I could be in a better mood.

(Tr. 36).

Although this particular employer appeared relatively accommodative to plaintiff's moods, he nevertheless only lasted at that job for about a year and a half (*see* Tr. 37). When asked by the ALJ what happened at the end of this particular job, plaintiff explained as follows:

> At the very end, they decided that they wanted to try to put me in a different position working with a crew of guys and I want to say one of the last days that I worked there, one of the guys had made a reference to me being gay, or pardon the word "faggot," and I snapped and I grabbed the guy by his throat, and I put him into a wall. Then from there, I don't really remember, but when I came to, my supervisor and the owner of the company were basically telling me I need to get off the property before they call the cops.

(Tr. 37). Plaintiff testified that he never had been arrested for, or tried or convicted of, anything (*see id.*).

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and disability benefits ("DIB") pursuant to Title II and for supplement security income ("SSI") pursuant to Title XVI of the Social Security Act on December 31, 2008 (*see* Tr. 102-10). His applications were denied initially on April 3, 2009 and following reconsideration on

August 3, 2009 (see Tr. 45-48, 51-55). His requested hearing was held before

Administrative Law Judge Verrell Dethloff ("the ALJ") on September 21, 2010 (*see* Tr.

26-40).

On November 2, 1010, the ALJ issued a written decision in which he found that

although plaintiff had the medically determinable impairments of bipolar disorder NOS;

post-traumatic stress disorder ("PTSD"); marijuana dependence; and history of

polysubstance abuse, that plaintiff did not have a combination of impairments that had

significantly limited his ability to perform basic work related activities for twelve

consecutive months (Tr. 13; *see also* Tr. 8-25). The ALJ therefore found that plaintiff did

not have a severe impairment or combination of impairments; and that plaintiff was not

disabled pursuant to the Social Security Act (Tr. 13-14, 19-20).

On February 13, 2012, the Appeals Council denied plaintiff's request for review,

making the written decision by the ALJ the final agency decision subject to judicial

review (Tr. 1-6). *See* 20 C.F.R. § 404.981. On April 3, 2012, plaintiff filed a complaint in

this Court, seeking judicial review of the ALJ's written decision (*see* ECF No. 1). On

June 6, 2012, defendant filed the sealed administrative transcript ("Tr.") regarding this

matter (*see* ECF Nos. 8, 9).

In his Opening Brief, plaintiff raises the single issue of whether or not the ALJ

erred in finding that plaintiff did not suffer from any severe mental health impairments at

step two of the sequential disability evaluation process (*see* Opening Brief, ECF No. 11,

p. 1: Reply Brief, ECF No. 13, p. 1).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-

*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1. **The ALJ erred in finding that plaintiff did not suffer from any severe mental health impairments at step two of the sequential disability evaluation process**.

The Commissioner has established a five-step sequential evaluation process to determine whether or not an individual is disabled as defined pursuant to the Social Security Act.  20 C.F.R. §§ 416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987), and it remains the proper approach for analyzing whether or not a claimant is disabled.

If the claimant is not engaged in substantial gainful activity, the Commissioner considers whether or not the claimant has a "severe impairment" that significantly limits physical or mental ability to do basic work activities. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on h[is] ability to function, without regard to whether each alone was sufficiently severe." *Smolen, supra*, 80 F.3d at 1290 (citations omitted).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example,

1  "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

2  capacities for seeing, hearing and speaking; understanding, carrying out, and

3  remembering simple instructions; use of judgment; responding appropriately to

4  supervision, co-workers and usual work situations; and dealing with changes in a routine

5  work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments

6  can be found 'not severe' only if the evidence establishes a slight abnormality that has

7  'no more than a minimal effect on an individual[']s ability to work.' "  *Smolen, supra*, 80

8  F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting*

9  Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening

10  device to dispose of groundless claims." *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v.*

11  *Yuckert*, 482 U.S. 137, 153-54 (1987)).

12  

13        According to Social Security Ruling 96-3b, "[a] determination that an individual's

14  impairment(s) is not severe requires a careful evaluation of the medical findings that

15  describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-

16  related symptoms), and an informed judgment about the limitations and restrictions the

17  impairments(s) and related symptom(s) impose on the individual's physical and mental

18  ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR

19  96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D.

20  Wa. 2009) (unpublished opinion). If a claimant's impairments are "not severe enough to

21  limit significantly the claimant's ability to perform most jobs, by definition the

22  impairment does not prevent the claimant from engaging in any substantial gainful

23  activity." *Bowen, supra*, 482 U.S. at 146.

24

Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen v. Apfel*, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

Here, as noted previously, the ALJ found that although plaintiff had the medically determinable impairments of bipolar disorder NOS; PTSD; marijuana dependence; and history of polysubstance abuse, that plaintiff did not have a combination of impairments that had significantly limited his ability to perform basic work related activities for twelve consecutive months; and therefore did not have a severe impairment or combination of impairments (*see* Tr. 13-14, 19-20).

Plaintiff first complains about the ALJ's lack of discussion regarding plaintiff's work history (*see* Opening Brief, ECF No. 11, p. 5 ("the ALJ completely ignores plaintiff's work history")). When the sequential disability evaluation does not progress beyond step two, as is the case here, a claimant's work history may not always be significant evidence. However, in this matter here, where, as discussed already by the

Court, plaintiff had almost forty jobs in about ten years, the work history supports

plaintiff's allegations about difficulties getting along with co-workers and supervisors;

and supports his allegations regarding limitations with respect to his ability to respond

appropriately to and tolerate the normal pressures of a normal work environment, *see*

*supra*, BACKGROUND.

In light of record as a whole, including Social Security records demonstrating

almost forty jobs in ten years, and including plaintiff's testimony regarding striking his

employers and grabbing a co-worker by the throat and tossing him into a wall, the Court

concludes that plaintiff's work history was significant, probative evidence that the ALJ

erred by failing to discuss and incorporate any analysis regarding this evidence into his

written decision. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95

(9th Cir. 1984) (per curiam) (The ALJ must explain why "significant probative evidence

has been rejected") (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

Without a specific rejection of the work history as alleged by plaintiff, (which might

require contacting plaintiff's former employers), the ALJ's implicit finding, by explicitly

finding no severe impairments, that the evidence established that plaintiff's mental

impairments comprised only "a slight abnormality that ha[d] 'no more than a minimal

effect on [plaintiff's] ability to work,'" is not based on substantial evidence in the record

as a whole. *See Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert, supra*, 841 F.2d at 306

(*adopting* SSR 85-28)).

The Court also concludes that this error was harmful, as it provided the basis for

the ALJ's conclusion ultimately that plaintiff was not disabled. This error alone is

sufficient to require reversal of this matter. However, this was not the only error committed by the ALJ in this matter currently before the Court.

>    2.   **The ALJ erred in his step two determination when he failed to credit fully opinions from examining doctor, Dr. Elia Gonzalez, M.D.**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if an examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, the ALJ must explain why his own interpretations, rather than those of the doctor, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

On March 21, 2009, Dr. Elia Gonzalez, M.D. examined plaintiff and reviewed his medical records from Allenmore Psychological Associates in 2008 (*see* Tr. 231; *see also* Tr. 231-35). She conducted a clinical interview, including discussing plaintiff's child abuse and his work history (*see* Tr. 231-33). Dr. Gonzalez noted plaintiff's self report that he did not use alcohol, but that he reported "that he uses marijuana on a daily basis

1  and he smoked 1/8 per day" (*see* Tr. 233). The record suggests that Dr. Gonzalez asked

2  plaintiff more about his marijuana use, as Dr. Gonzalez included the following in her

3  treatment record: "he feels that he needs to use marijuana in order to slow his thoughts

4  down and also to calm himself down. He has been using marijuana since the age of 9.

5  This information is corroborated by his wife" (*id.*).

6          Demonstrating a reliance on her own objective observations, Dr, Gonzalez noted

7  that plaintiff "presented with mild concentration difficulties during my exam" (*id.*). She

8  also observed that plaintiff presented with a constricted affect and that he explained the

9  proverb "don't cry over spilled milk," as "no use in crying over something you have no

10  control over" (*see* Tr. 234). When asked what he would do if he were to see a fire in a

11  crowded movie theater, he responded: "yell fire and get out" (*see* Tr. 235). Dr. Gonzalez

12  diagnosed plaintiff with bipolar disorder NOS [not otherwise specified] and PTSD

13  chronic; and assigned a global assessment of functioning ("GAF") of 55 (*id.*).

14          The ALJ gave the opinion of Dr. Gonzalez "little weight" and included the

15  following discussion in his written decision:

16      Consulting psychiatrist Elia Gonzalez MD examined the claimant in
        March of 2009, and gave the following assessment (internal citation to
17      4F5):

18          The claimant should have the ability to perform simple and
            repetitive tasks as well as detailed and complex tasks. The
19          claimant should have difficulty accepting instruction from
            supervisors and interacting with coworkers and the public
20          given his history of emotional dysregulation and history of
            being fired from multiple jobs because of this. I believe that
21          the claimant could not maintain regular attendance in the
            workplace or complete a normal workday/workweek without
22          interruptions due to his psychiatric condition. The claimant

will not be able to deal with the usual stress encountered in a competitive workplace. He has decompensated over the past year and his mood instability has led to poor coping skills.

Dr. Gonzalez's opinion is not supported by her clinical findings, which include a relatively normal mental status exam, with the claimant presenting as cooperative, with good eye contact and adequate attitude and behavior. It appears that she based her opinion largely on the claimant's self-report. Her opinion also is inconsistent with claimant's daily activities, and with the evidence of relative good symptom control with relatively little mental health treatment. Finally, Dr. Gonzalez did not adequately consider the claimant's marijuana dependence. For these reasons, the undersigned gives her opinion little weight. Moreover, the main underlying component of the claimant's past work issues, and his current lack of involvement in the world of work, appears to be motivational.

(Tr. 18 (footnote omitted)).

The Court first notes that the ALJ cited no support for his finding that plaintiff's "current lack of involvement in the world of work appears to be motivational," and that "the main underlying component of the claimant's past work issues" likewise was motivational (*id.*). The Court concludes that it is not based on substantial evidence in the record as a whole (*see id.*). Because of a lack of citation to an acceptable medical source, it appears that this finding is based on the ALJ's own interpretation of plaintiff's mental impairments and limitations. The Court finds relevant the following discussion from the Seventh Circuit:

[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.

*Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (internal citations omitted)).

The Court also finds troublesome the ALJ's potential misunderstanding of the mental status examination ("MSE"), suggested by the fact that the ALJ found that Dr. Gonzalez's opinions were not supported by clinical findings, when they were supported by her clinical interview, observations, and MSE (*see id.*). The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

1    In addition, when an ALJ seeks to discredit a medical opinion, he must explain

2    why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*,

3    157 F.3d at 725; *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)

4    ("When mental illness is the basis of a disability claim, clinical and laboratory data may

5    consist of the diagnosis and observations of professional trained in the field of

6    psychopathology. The report of a psychiatrist should not be rejected simply because of

7    the relative imprecision of the psychiatric methodology or the absence of substantial

8    documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987));

9    *Smith v. Astrue*, 2012 U.S. Dist. LEXIS 61640 at *11 (W.D. Wash. 2012) (unpublished

10   opinion) (*quoting Schmidt, supra*, 914 F.2d at 118). Here, the ALJ failed to explain why

11   his findings were more correct than those of Dr. Gonzalez.

12       The opinions of Dr. Gonzalez not only were supported by her MSE and clinical

13   interview, but also, they were supported by plaintiff's work history. The Court already

14   has found that the ALJ committed legal error by failing to mention plaintiff's many,

15   many employers; and by failing to reject explicitly plaintiff's testimony regarding the

16   difficulties he has encountered while working, *see supra*, section 1. The ALJ found that

17   Dr. Gonzalez's opinions appeared to have been based "largely on the claimant's self-

18   report" (*see* Tr. 18), when Dr. Gonzalez, in fact, relied in part on very significant

19   evidence that the ALJ failed to discuss (*see* Tr. 235)[1]. Dr. Gonzalez indicated explicitly

---

[1] The Court also notes an absence of discussion by the ALJ of supporting documentation for plaintiff's allegations from plaintiff's high school years in the form of disciplinary incidents (*see* Tr. 183-88 (multiple emergency expulsions and multiple suspensions for defiance of authority/insubordination; assault; disruptive behavior)).

her reliance on plaintiff's "history of being fired from multiple jobs" due to emotional dysregulation (*id.*).

Finally, the ALJ erred when he found that "Dr. Gonzalez did not adequately consider the claimant's marijuana dependence" (*see* Tr. 18). The Court already has noted Dr. Gonzalez's discussion with plaintiff regarding his marijuana use since age nine; the reasons for such use, which the ALJ fails to mention; as well as the corroboration of the marijuana use by plaintiff's wife, *see supra* (*see also* Tr. 233). Dr. Gonzalez considered plaintiff's marijuana dependence adequately, she simply came to a different conclusion regarding the meaning underlying such use or dependence than did the ALJ. But again, the ALJ did not explain adequately why his interpretation is more correct than that of the trained medical provider who conducted a clinical examination of plaintiff. *See Reddick, supra*, 157 F.3d at 725.

For the reasons discussed and based on the record as a whole, the Court concludes that the ALJ failed to evaluate properly the medical opinion of Dr. Gonzalez. The Court also concludes that this error is harmful.

Therefore, the ALJ's evaluation of the medical evidence provides an additional reason as to why this matter should be reversed and remanded for further consideration.

3. **Plaintiff's credibility and testimony should be evaluated anew following remand of this matter**.

The ALJ failed to credit fully plaintiff's allegations and credibility (*see* Tr. 14-17). An evaluation of credibility relies in part on the medical evidence, *see* 20 C.F.R. § 404.1529(c), and the Court already has concluded that this matter must be reversed and

1  remanded; and that the medical evidence must be evaluated anew, *see supra*, sections 1

2  and 2.  Therefore plaintiff's testimony and credibility must be evaluated anew following

3  remand of this matter.

4        However, the Court also notes that the ALJ relied in part on plaintiff's activities of

5  daily living when failing to credit fully plaintiff's testimony and credibility (*see* Tr. 17).

6  The ALJ included the following discussion on plaintiff's activities of daily living:

7
> Finally, the claimant has described daily activities that are inconsistent
8    with a finding that his impairments cause more than minimal functional
     limitations. He reports that he watches TV, plays video games, and uses
9    the computer for 2 hours per day (internal citation to 4F3). He reports
     that he loves working on his computer (*id.*). He further reports that he
10   has no problems with personal care, does light chores, prepares simple
     meals, takes his daughters to school every day, and talks to his friends on
11   the phone on a daily basis.

12  (*id.*).

13        The Court notes that the ALJ summarized plaintiff's allegations and testimony in

14  the following one paragraph:

15
> The claimant alleges that his ability to work is limited by PTSD and
16   bipolar disorder (internal citation to 5F). He reports that he has anger
     outbursts and cannot handle stress (*Id.*). He reports that has difficulty
17   (sic) finishing tasks, and experiences irritable mood, poor sleep, and
     decreased concentration and energy (4F). He endorses frequent
18   nightmares (*Id.*). He also reports a long history of being fired from jobs
     for difficulty getting along with others (*Id.*). At hearing (sic) the claimant
19   testified that he stays in his house most of the time and does not like to
     interact with his neighbors.
20

21  (Tr. 15).

22        Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that

23  the mere fact that a plaintiff has carried on certain daily activities  .  .  .  .  does not in any

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 18

1   way detract from h[is] credibility as to h[is] overall disability." *Orn v. Astrue*, 495 F.3d

2   625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

3   2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the

4   basis of an adverse credibility determination: (1) whether or not they contradict the

5   claimant's other testimony and (2) whether or not the activities of daily living meet "the

6   threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*,

7   885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings

8   relating to the daily activities' and their transferability to conclude that a claimant's daily

9   activities warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639

10  (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

11  

12      Here, the ALJ failed to make any specific findings regarding whether or not

13  plaintiff's watching TV, playing video games, doing light chores, preparing simple

14  meals, taking his daughters to school, and talking on the phone with friends met "the

15  threshold for transferable work skills" and failed to identify any testimony or allegation

16  by plaintiff that was contradicted by these activities. *See Orn, supra*, 495 F.3d at 639

17  (*citing Fair, supra*, 885 F.2d at 603). This was legal error. *See id.*

18      The Court also notes that the ALJ relied on his finding that "the record reflects no

19  evidence of mental health treatment" when assessing plaintiff's credibility (*see* Tr. 17).

20  However, the ALJ failed to mention or discuss the fact that when asked why he had not

21  had treatment in a while, plaintiff testified that he could not afford it: "Can't afford it-I

22  haven't been able to work" (*see* Tr. 29; *see also* Tr. 33). The ALJ failed to discuss how

23  plaintiff's inability to afford health care might provide an adequate explanation as to why

24

he had not received mental health treatment. However, according to Social Security Ruling, ("SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *21-*22;  *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted). Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

Finally, when relying on clinical findings for his determination regarding plaintiff's credibility, the ALJ also appeared to rely on a finding that "Consulting psychiatrist Elia Gonzales MD noted only mild concentration difficulties with adequate

persistence and pace" (*see* Tr. 16). A review of this Court's discussion of the ALJ's review of the opinion of Dr. Gonzales, including her indication that plaintiff "could not maintain regular attendance in the workplace or complete a normal workday/workweek without interruptions due to his psychiatric condition," and would "not be able to deal with the usual stress encountered in a competitive workplace" (*see* Tr. 235) demonstrates the lack of substantial evidence in the record for the ALJ's summary of Dr. Gonzales' opinion as stated in the context of plaintiff's credibility, *see supra*, section 2.

## CONCLUSION

Based on the stated reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 22, 2013, as noted in the caption.

Dated this 1st day of February, 2013.

J. Richard Creatura
United States Magistrate Judge